IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Winyah Davenport o/b/o K.D.,<br><br>                       Plaintiff,<br><br>   vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                       Defendant. | Civil Action No. 6:14-3858-MGL-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action on behalf of her teenage daughter pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for supplemental security income ("SSI") benefits on August 24, 2011, on behalf of her daughter ("K.D." or "the claimant"), a child under the age of 18, alleging disability commencing April 6, 2008. The application was denied initially and on reconsideration by the Social Security Administration. On July 10, 2012, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and K.D. appeared on April 25, 2013, considered the case *de novo*, and on May

---

[1] A report and recommendation is being filed in this case in which one or both parties declined to consent to disposition by the magistrate judge.

30, 2013, found that K.D. was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on August 6, 2014. The plaintiff then filed this action for judicial review.

In making the determination that K.D. is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant was born on October 26, 1997. Therefore, she was an adolescent on August 24, 2011, the date the application was filed, and is currently an adolescent (20 C.F.R § 416.926a(g)(2)).
>
> (2)     The claimant has not engaged in substantial gainful activity since August 24, 2011, the application date (20. C.F.R. §§ 416.924(b) and 416.971 *et. seq.*)
>
> (3)     The claimant has the following severe impairments: hypertension, diabetes, dysmenorrhea, obesity, and headaches (20 C.F.R. § 416.924(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926).
>
> (5)     The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926a)
>
> (6)     The claimant has not been under a disability, as defined in the Social Security Act, since August 24, 2011, the date the application was filed (20 C.F.R. § 416.924(a)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

For purposes of eligibility for Title XVI children's disability benefits, an individual under age 18 will be considered disabled if she has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner's regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity. If so, she is not disabled; if not, (2) determine whether the child has a severe impairment or impairments. If not, she is not disabled; if so (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment listed at 20 C.F.R. pt. 404, subpt. P, app.1 (the Listings). If not, she is not disabled. 20 C.F.R. § 416.924(b)-(d). If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements. *Id.* § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, broad areas of functioning intended to capture all of what a child can or cannot do. *Id.* § 416.926a(b)(1). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well being. *Id.*

To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). The Commissioner will find that a claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments interferes seriously with her ability to

independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme" and may arise when several activities or functions are limited or when only one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). Extreme limitation also means a limitation that is "more than marked" and may arise when several activities or functions are limited or when one is limited. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**EVIDENCE PRESENTED**

K.D. was 13 years old on the date the application was filed and 15 years old on the date of the ALJ's decision. The plaintiff alleges that K.D. is disabled due to diabetes, high blood pressure, and asthma (Tr. 171).

The plaintiff testified at the administrative hearing in April 2013 that K.D. was "doing well" in school (Tr. 38, 46). K.D.'s mental impairments have never resulted in her being held back in school or qualified her for special education placement (Tr. 38, 274). The plaintiff also testified that K.D. was acting agitated and violent with teachers at school, possibly because she felt sick with migraines, low blood sugar, or heavy menstrual bleeding (Tr. 39). She testified that K.D. could do nothing when she had a migraine, that she sometimes vomited from the pain, and slept after taking the pain medication (Tr. 40, 53). The plaintiff testified that birth control pills helped control K.D.'s heavy menstrual bleeding (Tr. 41). She further testified that K.D. was 5' 8" tall and weighed 265 pounds (Tr. 41). The plaintiff testified that K.D. has headaches four to five times a month (Tr. 55).

At the administrative hearing, K.D. testified that she remained close with two cousins and a classmate (Tr. 57). She also described herself on a medical form as friendly and nice (Tr. 358).

On May 2, 2007, K.D. was recommended for a psychological evaluation by her school to determine eligibility for a special education program. The evaluator noted that K.D. was in the third grade and was having difficulty with her class work and failing two classes. She was noted to be moody, temperamental, and withdrawn (Tr. 269). The evaluator determined that K.D. did not meet state and federal eligibility requirements for special education placement (Tr. 274). The evaluator made recommendations for educators to assist K.D. with her difficulty in spatial organization and her inattention to visual details (Tr. 274-75).

In September 2011, K.D. began home schooling (Tr. 181). However, the plaintiff reported that in January 2012, K.D.'s "issues . . . resolved enough for her to return to school," but she still suffered from bleeding, headaches, high blood pressure, and diabetes (Tr. 201).

In March 2013, K.D. was referred to Patricia Touma, M.A.,L.P.C., for behavioral problems at home and at school and for emotional outbursts (Tr. 386, 388). Ms. Touma saw K.D. on two occasions prior to April 10, 2013, when she opined that K.D. had a marked limitation with interacting and relating to others. Ms. Touma noted that K.D. misinterprets information from situations and people due to her exposure to violence and trauma, and the misinterpretation causes her to be unable to cope effectively. She further opined that K.D. had not developed healthy emotional self-regulation skills, which put a tremendous strain on her social relationships (Tr. 386).

K.D. was treated for headaches by Tim Livingston, M.D., a pediatric neurologist, beginning in November 2011 (Tr. 372-81, 406-07, 413-14). In February and September 2012, Dr. Livingston observed that K.D. had normal strength and coordination and walked with a normal gait (Tr. 379, 414). On September 20, 2012, Dr. Livingston noted that K.D. had a headache about every other week. K.D. felt that nortriptyline had helped. She also took ibuprofen with some benefit (Tr. 413).

For hypertension, K.D. treated with Robert Holleman, M.D., a pediatric nephrologist (Tr. 210-16, 230-31, 28281, 284-85, 368-69, 409-19). Dr. Holleman reported in February 2013 that K.D. "has well controlled hypertension despite ongoing weight gain" (Tr. 411). Dr. Holleman noted in January 2013 that K.D.'s headaches occurred once a week (Tr. 409).

K.D.'s primary care physician is Dan Bodison, M.D. (Tr. 297-344, 385, 388-405). Dr. Bodison stated in a letter dated February 6, 2013, that K.D. had been diagnosed with chronic hypertension, asthma, obesity, and diabetes. He stated that many

of K.D.'s issues were chronic in nature and required daily medications. Dr. Bodison stated that he supported K.D.'s claim for benefits (Tr. 385). K.D.'s treating sources, including Dr. Bodison, have all recommended that K.D. increase her activity level and exercise (Tr. 212, 231, 255, 311, 411).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to properly consider K.D.'s morbid obesity and (2) failing to properly consider the opinions of K.D.'s treating sources (pl. brief 1-4).

### *Obesity*

The plaintiff argues that the ALJ underestimated the effect of K.D.'s obesity on her health and well-being (pl. brief 1-2). Social Security Ruling ("SSR") 02-1p provides, "We may . . . find that obesity, by itself, is . . . in the case of a child applying under title XVI, also functionally equivalent to the listings." 2000 WL 628049, at *5. The ruling further recognizes that obesity can cause limitations of function in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards. *Id.* at *6. The ruling notes with regard to a child applying for benefits under Title XVI:

> [W]e may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (e.g., Moving about and manipulating objects) or marked limitations in two domains (e.g., Moving about and manipulating objects and Caring for yourself).

*Id.* The ruling states that "individuals with obesity may have problems with the ability to sustain a function over time" and that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity." *Id.* The ruling also states:

7

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.* Further, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

Here, the ALJ recognized K.D.'s weight issues and discussed the extent that her weight had on her functioning (Tr. 15-16). In discussing K.D.'s weight issues and related problems, the ALJ correctly noted (Tr. 16) that K.D.'s blood pressure, a byproduct of obesity, was controlled (Tr. 411, 417); that her headaches occurred only weekly (Tr. 409); that medication controlled her gynecological issues (Tr. 424, 431); that despite her health issues, K.D. was encouraged to exercise (Tr. 212, 231, 255, 311, 411); that Dr. Whitney Brown, a pediatric endocrinologist who examined K.D. in September 2011, found that K.D. did not have diabetes at that time, that it was not necessary for K.D. to test her blood sugar at home, and encouraged K.D. to add regular physical activity and to limit screen time (Tr. 254-55); and that neurologist Dr. Livingston observed improvement in K.D.'s headaches (Tr. 379, 413).

In finding that K.D. did not have an impairment or combination of impairments that functionally equals the severity of the listings, the ALJ noted that no documented physician imposed permanent restrictions on K.D., and her physicians on multiple occasions encouraged her to increase physical activities (Tr. 17). The ALJ also noted (Tr. 20) that in September 2011 the plaintiff completed a child function report in which she stated that K.D.'s physical activities were not limited (Tr. 161). In terms of the functional equivalence domains, the ALJ found K.D. had "no limitation in moving about and manipulating objects," "no limitation in the ability to care for herself," and "less than marked limitation in health and physical well-being" (Tr. 23-25). The ALJ gave "considerable weight"

to the opinions of the State agency medical consultants who found in November 2011 and May 2012 that K.D. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any listing (Tr. 19). The consultants specifically considered K.D.'s obesity in making these findings (Tr. 60-67, 70-78).

Based upon the foregoing, the plaintiff has failed to show that the ALJ erred in his consideration of K.D.'s obesity.

## *Treating Sources*

The plaintiff next argues that the ALJ failed to properly consider the opinions of Dr. Bodison, Dr. Holleman, and Ms. Touma. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other

9

> substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

### *Dr. Bodison*

Dr. Bodison, a treating physician, stated in a letter dated February 6, 2013, that K.D. had been diagnosed with chronic hypertension, asthma, obesity, and diabetes. He stated that many of K.D.'s issues were chronic in nature and required daily medication, and he stated that he "support[ed]" K.D.'s claim for benefits (Tr. 385). The ALJ considered Dr. Bodison's opinion and gave it "limited weight" (Tr. 18). As the ALJ explained, Dr. Bodison did not sufficiently support his finding and made only a conclusory statement (Tr. 18). Dr. Bodison did not describe K.D.'s functional loss with any specificity. Moreover, as argued by the Commissioner, Dr. Bodison's opinion is inconsistent with other record evidence. The record shows that K.D. does "pretty well in school," and her mental impairments have never resulted in her being held back in school, nor has it qualified her for special education placement (Tr. 38, 46, 274). Dr. Holleman reported in February 2013 that K.D. "has well controlled hypertension despite ongoing weight gain" (Tr. 411). With regard to her diabetes, K.D. was examined by Dr. Brown, a pediatric endocrinologist, who stated in September 2011 that K.D. did not have diabetes at that time, and it was not necessary for K.D. to test her blood sugar at home. Dr. Brown encouraged K.D. to add regular physical activity and to limit screen time (Tr. 254-55). Further, treating sources, including Dr. Bodison, have recommended that K.D. increase her activity level and exercise, rather than slow down (Tr. 212, 231, 255, 311, 411). With regard to headaches, in September 2012 and April 2013, Dr. Livingston noted that K.D. had a headache about

every other week.  Prescription medication and ibuprofen were noted to help (Tr. 406, 413). Although the plaintiff claims that K.D.'s "medical problems were so restricting that she received homebound schooling during the entire 8th grade" (pl. brief 3), the record shows that K.D. began homeschooling in September 2011 (Tr. 181).  However, the plaintiff reported that in January 2012, K.D.'s "issues . . . resolved enough for her to return to school" (Tr. 201).  Based upon the foregoing, the undersigned finds that the ALJ did not err in his consideration of Dr. Bodison's opinion.

### Ms. Touma

On April 10, 2013, counselor Ms. Touma,[2] opined that K.D. had a marked limitation in interacting and relating to others (Tr. 386).  The ALJ gave Ms. Touma's opinion "negligible weight," noting that Ms. Touma was not an "acceptable medical source for determining the existence of an impairment, so her opinion is not entitled to the deference usually given a treating physician."  The ALJ also noted that Ms. Touma had seen K.D. only twice at the time she gave her opinion. Further, the ALJ noted the opinion was unsupported because counseling notes were missing.  The ALJ also noted that neither school records nor the notes of the treating physicians documented any consistent, significant, or abnormal medical signs related to K.D.'s mental status.  Moreover, at no time did K.D. visit a pediatric psychologist (Tr. 18).

Only "acceptable medical sources," may provide evidence to establish that a claimant has a medically determinable impairment.  20 C.F.R. § 416.913(a); SSR 06-03p, 2006 WL 2329939, at *1. A counselor is not an "acceptable medical source," but rather is considered an "other source" under the regulations.  *Id.* § 416.913(d) ("In addition to

---

[2]The plaintiff states in her brief that Ms. Touma is a psychologist (pl. brief 2).  Licensed or certified psychologists are "acceptable medical sources" under the regulations.  *See* 20 C.F.R. § 416.913(a)(2). However, Ms. Touma's stationary indicates that she holds a Master of Arts degree and is a Licensed Professional Counselor (Tr. 386).  There is no indication that Ms. Touma is a licensed psychologist.

11

evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and . . . if you are a child, how you typically function compared to children your age who do not have impairments. Other sources include . . . therapists). The weight to be given to evidence from other sources "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . ." SSR 06-03p, 2006 WL 2329939, at *4.  "[O]nly 'acceptable medical sources' can be considered treating sources, . . . whose medical opinions may be entitled to controlling weight." *Id.* at *2. The ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. The length of the treatment relationship and the frequency of the examinations and the evidence with which the opinion was supported are proper considerations by the ALJ. 20 C.F.R. §, 416.927(c)(1)-(5). Here, the ALJ adequately explained the weight give to the opinion of Ms. Touma, and his assessment is supported by substantial evidence.

### Dr. Holleman

Finally, the plaintiff also argues that the ALJ failed to give adequate weight to the opinion of Dr. Holleman, K.D.'s pediatric nephrologist (pl. brief 2). However, other than this summary statement, the plaintiff does not explain how the ALJ erred in this regard (*see generally* pl. brief). Neither the plaintiff nor the Commissioner cite an opinion given by Dr. Holleman. Here, the ALJ carefully evaluated Dr. Holleman's notes regarding his treatment of K.D. and her struggles with obesity and headaches, which Dr. Holleman noted occurred weekly (Tr. 15-16; *see* Tr. 409, 413). Additionally, the ALJ correctly discussed Dr.

Holleman's notes regarding the status of K.D.'s hypertension, explaining that it "was well controlled despite her gaining weight" (Tr. 16 (citing Tr. 411, 417)).

Based upon the foregoing, the ALJ appropriately considered the medical opinions, and substantial evidence supports his decision finding that K.D. does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments. The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted).

## **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision is based upon substantial evidence and is free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

March 16, 2016
Greenville, South Carolina